**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**William J. McCARTHY, Defendant-**
**Appellant.**

**No. 18365.**

United States Court of Appeals,
Seventh Circuit.

July 7, 1971.

Maurice J. McCarthy, William J. Nellis, Chicago, Ill., for appellant.

William J. Bauer, U. S. Atty., Samuel Skinner, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee; John Peter Lulinski, Jeffrey Cole, Thomas G. Dent, Donald C. Shine, Asst. U. S. Attys., of counsel.

Before KNOCH, Senior Circuit Judge, and KERNER and STEVENS, Circuit Judges.

STEVENS, Circuit Judge.

Defendant's seemingly routine three-count indictment for understating his taxable income for the years 1959, 1960 and 1961 has engendered legal issues of unusual significance.

In its opinion finding reversible error in the district court's failure to adhere to the letter of the 1966 amendment to Rule 11 of the Federal Rules of Criminal Procedure, the Supreme Court vindicated defendant's right to withdraw his plea of guilty to Count II. McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418. We now find reversible error in the use of a 1932 felony conviction for impeachment purposes in a 1970 trial. We must also decide whether defendant's retrial shall be limited to Count II, or may also encompass Count III which was reinstated after remand from the Supreme Court and after the statute of limitations had run.

I.

Defendant was born in 1900. In 1932 he was convicted of robbery and sentenced to a term of imprisonment for from 1 to 20 years. After serving one year, he was paroled, and thereafter received a full pardon from the Governor of Illinois.[1] He thereafter was employed in the printing business and, as far as the record discloses, encountered no difficulties with the law until this litigation arose.

On April 1, 1966, he was indicted for violation of 26 U.S.C. § 7201. He originally pleaded not guilty to all three counts, but on July 15, 1966, his counsel advised the court that he desired to change his plea on Count II. The Government then moved to dismiss Counts I and III, and the court stated: "Not until the plea is accepted and there is a judgment thereon."[2]

After the plea was accepted the Government renewed its motion to dismiss Counts I and III and also requested the court "to ask whether or not any promise or threat has been made." Both the defendant and his attorney responded that no promise had been made "for entering a plea of guilty."[3] The court then dismissed Counts I and III and ordered a pre-sentence investigation.[4]

On September 14, 1966, the court imposed a sentence of imprisonment of one year and a fine of $2,500. At that hear-

---

1. The pardon stated, in part:

   " * * * At the time of his incarceration he was married and the father of four children. Prior to the difficulty which resulted in his conviction, he had enjoyed a good reputation and had a steady employment record. It has been represented to me that he joined the Marines in April, 1917, served overseas, and was honorably discharged in July, 1919. After his release on parole May 29, 1933 he resided with and supported his wife and children. He was steadily employed as a salesman and during his three year parole period made a thoroughly satisfactory adjustment.

   "Since his discharge from parole which occurred July 7, 1936, he has continued as a law abiding citizen and there is every

   evidence he is thoroughly rehabilitated. He requests a pardon so that he may again enjoy all the rights of a citizen.

   "I have carefully reviewed the entire record in this case and believe I am warranted in granting a full and complete pardon to William J. McCarthy and thus restoring his full rights of citizenship."

2. See 394 U.S. at 473, 89 S.Ct. at 1174.

3. See 394 U.S. at 474, 89 S.Ct. at 1175.

4. It may be noted that this hearing was conducted only two weeks after the effective date of the amendment to Rule 11 which added the requirement of direct allocution between the court and the defendant.

ing the Government made reference to the dismissal of Counts I and III, explaining that the "prime consideration of that was an understanding between the parties that all taxes, penalties and interest would be paid."[5] It appears that the court was also advised of the 1932 robbery conviction and considered it irrelevant on the issue of punishment.[6]

Nine days after sentencing, defendant appealed his conviction. The Government did not take a cross-appeal and made no motion to reinstate Counts I and III at that time.

This court affirmed but, as already noted, the Supreme Court reversed and remanded with directions that defendant be afforded the opportunity to plead anew. The Supreme Court's mandate was received in the district court on May 1, 1969. In the meantime, the six-year statute of limitations on the offenses charged in the dismissed counts had expired. 26 U.S.C. § 6531.

On October 1, 1969, the Government filed a motion to vacate the order dismissing Counts I and III. On November 10, 1969, the court reinstated the dismissed counts, defendant was ar-

raigned, and the trial commenced. Defendant testified in his own behalf, but the Government made no attempt to use the 1932 robbery conviction for impeachment. The jury returned a verdict of not guilty on Count I and was unable to reach a verdict on the other two counts.

Before the second trial commenced, Government counsel advised his opponent that he proposed to use the 1932 conviction to impeach defendant's credibility if he again took the stand. Pretrial objections to the use of the conviction were then argued and overruled. The district court expressed the view that with the exception of the Court of Appeals for the District of Columbia, whose decisions he declined to follow, it is universally held that a prior felony conviction is admissible for the purpose of impeaching a witness.[7] The matter was reargued during the course of the trial; at that time the judge indicated that admissibility might be a matter of discretion for the trial court, but found no guidelines relevant to the exercise of his discretion.[8]

The conviction was admitted, and Government counsel referred to it extensively during oral argument.[9] The jury

5. A.9.

6. "Officer Sanculius: Your Honor, I just wondered whether you had received the additional—
"The Court: Even if he had not got that pardon anything that happened that long ago has no bearing on what I have done." A.9.

7. "The Court: What do you mean?
"As I understand it, from time immemorial in every state and federal court in the union, a prior conviction for an infamous crime or a felony is admissible for the purpose of impeaching a witness or anyone who takes the stand." A.39.

8. "Mr. Nellis: There is a time—now, I am not just disregarding or abandoning any of the previous arguments, but as far as present practice is concerned and in the exercise of discretion there are certainly areas of time where it comes closer to being relevant. But when 38 years pass, Judge—
"The Court: How about 28?
"Mr. Nellis: I don't know where to fix the line. I only say that 38 years is too

far. That is all I can say, because that is the only case that my client has.
"The Court: I need some guidelines from you in regard to my discretion. I don't want a specific case. Because in this case it is 38 you are not going to suggest what I should do when it is 28—
"Mr. Nellis: No, this is the only case that I can really deal with, Judge, and in this case it seems abundantly clear to me, at least, that to allow this fact to enter into the trial would prejudice my client irreparably.
"The Court: Well, it unquestionably has prejudiced everybody's client whenever it has been admitted in evidence, even though the conviction was 1 year before the trial of the federal offense. I mean, the mere fact that it is prejudicial, as I understand the law, is not sufficient to bar it." A.135

9. "Well, he is a man of good character. That is what they want you to believe. He is a convicted felon. You bring up a convicted felon because the law thinks that you as jurors are entitled to know, because it goes to the credibility of a per-

found defendant guilty on both counts, and the court reimposed a one year sentence and a fine of $2,500 on Count II; concurrent sentences of one year were imposed on Count III and on lesser included offenses.

## II.

■ The use of defendant's 1932 felony conviction may have been the decisive factor in persuading the jury to find him guilty on Counts II and III. His defense was predicated primarily on evidence of good character and poor health, which was designed to fortify his position that he had not "wilfully" attempted to evade his tax liabilities. The defense was partially successful at his first trial, and might well have succeeded at the second if his robbery conviction had been excluded. We are satisfied that if this evidence was improperly received, the error was sufficiently prejudicial to require reversal.

The Government correctly points out that this court has sustained the use of prior convictions in several recent decisions in which reliance was placed on the Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates which was prepared under the direction of the Committee on Rules of Practice and Procedure of

son. * * * a factor that the law requires to be entered into it for whatever value you give it is his conviction for robbery. There is no way that you can remove it.

"* * * He is a convicted felon and his conduct since then—and he was no boy when he was convicted, he was a 31-year old man. You compute it yourself, ladies and gentlemen.

"Mr. Nellis: Objection, Judge.

"The Court: Overruled.

"Mr. Skinner: You compute it from what his age is to the conviction and you will see that he was 31 years old. He was not a young boy, he was a 31-year old man who had formed his habits in life." A.178–79

10. The quotations are from the 1971 draft which made changes that do not affect this case. The respective paragraphs in the 1969 draft read as follows:

the Judicial Conference of the United States. See United States v. Morefield, 411 F.2d 1186, 1188 (7th Cir. 1969); United States v. Cox, 428 F.2d 683, 689 (7th Cir. 1970); United States v. Escobedo, 430 F.2d 14, 18–20 (7th Cir. 1970); United States v. Gornick, No. 18671 (7th Cir. June 9, 1971) pp. 7–8. Both the Draft of Proposed Rules as promulgated in March, 1969, and the Revised Draft promulgated in March, 1971, contain guidelines which we consider controlling on the precise question presented here.

Proposed Rule 609(b) provides:

"Time Limit. Evidence of a conviction under this rule is not admissible if a period of more than 10 years has elapsed since the date of conviction or of the release of the witness from confinement, whichever is the later date."

Moreover, Proposed Rule 609(c) provides:

"Effect of Pardon, Annulment, or Certificate of Rehabilitation. Evidence of a conviction is not admissible under this rule if (1) the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure, and (2) the procedure under which the same was granted or issued required a substantial showing of rehabilitation or was based on innocence." [10]

"(b) Time limit. Evidence of a conviction under this rule is inadmissible if a period of more than 10 years has elapsed since the date of the release of the witness from confinement, or the expiration of the period of his parole, probation, or sentence, whichever is the later date.

(c) Effect of Pardon, Annulment, or Certificate of Rehabilitation. Evidence of a conviction is inadmissible under this rule if (1) the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure, and (2) the procedure under which the same was granted or issued required a substantial showing of rehabilitation or was based on innocence." The 1971 draft is printed in 437 F.2d No. 3 (Apr. 12, 1971).

Either subparagraph (b) or subparagraph (c) of Proposed Rule 609 would have required the exclusion of defendant's 1932 conviction. It was 38 years old at the time of trial and he had received a full pardon which recited complete rehabilitation. For the reasons set forth in the Advisory Committee's Notes to the Proposed Rules, we believe this is a case in which the danger of unfair prejudice to the accused substantially outweighs the probative value of the prior conviction.

We also believe, as suggested by the frequent reference to the Proposed Rules in our recent opinions, that these proposals should be used by the district courts as guidelines and at least given consideration in the exercise of their discretion in making evidentiary rulings.[11] There may, of course, be cases in which a proposed rule should not be followed. We have concluded, however, that this is not such a case.

### III.

Unless defendant enters into a new plea bargain with the Government, he must stand trial again. The question which remains is whether the trial shall be limited to Count II, or shall also, by reason of his breach of the 1966 plea bargain, also include Count III.

As we appraise the facts, defendant seeks to retain the benefit of his bargain with the Government while avoiding its principal burden. Although not fully stated on the record, it is evident that the Government's motion to dismiss Counts I and III was filed pursuant to

11. We note that the Illinois Supreme Court has recently decided to follow Proposed Rule 609. See People v. Montgomery, 47 Ill.2d 510, 268 N.E.2d 695 (1971).

12. Our conclusion is based partly on the sequence of events and partly on the prosecutor's explanation that the dismissal was primarily motivated by the understanding that defendant would discharge his tax obligations. We do not overlook defendant's disavowal of any promise or threat by the Government, and the prosecution's acquiescence therein.

an understanding with the defendant that he would plead guilty to Count II and make full payment of all taxes, penalties and interest.[12] It is also reasonable to infer that the defendant did not anticipate the jail sentence which the court imposed. When he filed his appeal, nine days later, he in effect rescinded his bargain with the Government.

■ We have no doubt that the Government then had the right to make the rescission complete and promptly to reinstate the dismissed counts. See United States v. Liguori, 430 F.2d 842, 851 (2nd Cir. 1970) (Lumbard, C. J., concurring). The question is not so easily answered, however, when the Government postpones its request for reinstatement for a period of three years and until after the statute of limitations has run.[13]

We find no controlling authority on the precise point and recognize a reasonable basis for either position. The Government views the dismissal of Counts I and III as conditioned on the final acceptance of the guilty plea on Count II. This view finds support in the district court's comment at the time the motion to dismiss was originally filed. Under this interpretation until the status of Count II was finally determined, the dismissal of Counts I and III was only tentative or conditional. It would have been inappropriate to reinstate these counts while the Government anticipated (albeit incorrectly) ultimate affirmance of the conviction on Count II.

13. Apparently Chief Judge Lumbard assumed the indictment would have to be reinstated before the prosecution was barred by limitations:

"If the government elects to continue with the prosecution of Liguori it must do so promptly, as the acts charged occurred more than four years ago and the running of the statute of limitations will soon become a bar to any further prosecution." 430 F.2d at 851.

On the other hand, from defendant's point of view, the contractual element of the plea is subordinate to the legal effect of the unequivocal dismissals. The Government identified defendant's agreement to make restitution as a prime consideration for the dismissals, and unless the prosecutor was willing to disclose on the record that there was a further consideration for the guilty plea, which disclosure might have influenced the pending appeal, he should be held to his limited description of the understanding between the parties. Moreover, having failed to reinstate Counts I and III before the statute of limitations ran, the prosecution of these counts must be regarded as having terminated within the meaning of Rule 48(a).[14]

In balance, we find the defendant's argument more persuasive. We agree with the implication in Chief Judge Lumbard's opinion that in a situation of this kind the Government must proceed with diligence, and that the right to prosecute will be lost unless the record is protected by filing a timely motion to reinstate the dismissed counts. Moreover, in view of the age of this litigation, and the fact that a retrial on Count III is unlikely to have a significant practical effect on its ultimate disposition,[15] (although it might be a predicate for still another appeal) we believe the scales should be tipped in favor of the defendant.

### IV.

Defendant has assigned a number of other errors which we have considered and found to be without merit.

The judgment is reversed and the case is remanded for a new trial on Count II.

14. "The Attorney General or the United States attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate. * * *" Rule 48(a) F.R.Crim.P.

15. Count II involves a claimed deficiency of $5,143.71; Count III involves only $1,020.30. Even if found guilty on Count III as well as Count II, the judge would no doubt impose concurrent sentences as he did before.